UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
                                                             :
IN RE WORLD TRADE CENTER DISASTER         :   **ORDER AND OPINION**
SITE LITIGATION                                              :   **GRANTING MOTIONS TO**
                                                             :   **QUASH SUBPOENAS OF FDNY**
                                                             :   **AND NYPD PENSION FUND**
------------------------------------------------------------ x   **MEDICAL BOARD DOCTORS**
RAYMOND HAUBER,                                              :
                                                             :
                                  Plaintiff,   :
                                                             :   21 MC 100 (AKH)
               -against-                            :   05 Civ. 9141 (AKH)
                                                             :
THE CITY OF NEW YORK,                                        :
                                                             :
                                  Defendant.   :
------------------------------------------------------------ x
LARON CASEY,                                                 :
                                                             :
                                Plaintiff,   :
                                                             :
               -against-                            :   06 Civ. 8890 (AKH)
                                                             :
THE CITY OF NEW YORK,                                        :
                                                             :
                                Defendant.   :
------------------------------------------------------------ x
SCOTT MALKOFF,                                               :
                                                             :
                                Plaintiff,   :
                                                             :
               -against-                            :   06 Civ. 11710 (AKH)
                                                             :
THE CITY OF NEW YORK,                                        :
                                                             :
                                Defendant.   :
------------------------------------------------------------ x
ALVIN K. HELLERSTEIN, U.S.D.J.:

     On September 24, 2009, the City of New York ("City") moved to quash subpoenas issued to FDNY Pension Fund Medical Board doctors and on October 7, 2009, it moved to quash subpoenas issued to NYPD Pension Fund Medical Board doctors.

Because I find that testimony and documentation regarding the thought processes and deliberations of both Medical Boards are protected by the deliberative process and mental processes privileges, I grant the City's motions.

The FDNY and NYPD Pension Funds are statutory creatures independent from the FDNY and NYPD.  Title 13 of the New York City Administrative Code establishes the Funds and the rules governing their operation.  N.Y.C. Admin. Code Title 13, Chapters 1-2.  The Funds "have the powers and privileges of a corporation," and are each governed by a separate Board of Trustees.  Id. §§ 13-216(a), 12-220, 13-316(a), 13-220, 13-320.  The regulations governing the Funds create Medical Boards tasked with determining eligibility for medical disability retirement.  Id. §§ 13-223(a)(1), 13-323.  The Boards consist of three doctors.  Id.  The Board of Trustees, the Commissioner of Health, and the Commissioner of Citywide Administrative Services each appoint one doctor to the Board.  The doctors are independent contractors, not employees of the NYPD or FDNY.

When a firefighter or police officers submits an application for a disability pension, the Medical Board reviews the applicant's medical records and discusses eligibility with reference to the statutory guidelines.  Several statutory presumptions apply to the Board's determination of eligibility.  For example, under the "World Trade Center Presumption," any Fund member who "participated in World Trade Center rescue, recovery or cleanup operations" and is diagnosed with "a qualifying World Trade Center condition, as defined in section two of the retirement and social security law," is entitled to a presumption "that such disability was incurred in the performance and discharge of duty as the natural and proximate result of an accident not caused by such member's own

2

willful negligence." Id. §§ 13-252.1 and 13-353.1.  The statutes also create a variety of other presumptions.  See, e.g., N.Y. Gen. Mun. Law § 207-kk (creating presumption for firefighters that certain cancers were incurred in course of duty); Id. § 207-q and N.Y.C. Admin. Code § 13-354 (creating presumption for firefighters that lung injuries resulted from accidents in course of duty); N.Y. Gen. Mun. Law § 207-k (creating presumption that disabilities resulting from heart disease or stroke were incurred in course of duty). After the Board makes its recommendation, the Board of Trustees makes the ultimate determination of eligibility.

   Plaintiff Hauber, an FDNY firefighter, and Plaintiffs Casey and Malkoff, NYPD officers, received disability pensions after the Medical Boards recommended their eligibility.  On February 16, 2006, the FDNY Pension Fund Medical Board, after reviewing Plaintiff Hauber's medical records and applying the presumption under the Cancer Bill, determined that he was disabled due to esophageal cancer and was eligible for accidental disability retirement.  Carboy Certification, Ex. 3.  On January 26, 2007, the NYPD Pension Fund Medical Board recommended approval of Officer Casey's application for accidental disability retirement, pursuant to the World Trade Center Disability Law, based on its review of his medical records and complaints regarding his diagnosis of reactive airway disease and chronic sinusitis.  Gleason Aff. Ex. B.  On April 14, 2004, the NYPD Pension Fund Medical Board rescinded an earlier decision denying Officer Malkoff's application for disability retirement.  In light of new medical reports regarding his condition, the Board recommended approval of his application for a disability pension based on the diagnosis of probable reactive airway disease.  Id. Ex. C.

In August 2009, Plaintiffs served subpoenas on the City of New York seeking to depose the Medical Board doctors that considered Plaintiffs' applications and obtain documents regarding their decision-making process. The City moved to quash the subpoenas on the grounds that the Board's testimony and documents regarding its decision-making process are irrelevant and protected by the deliberative process and mental processes privileges.

Motions to quash subpoenas are "entrusted to the sound discretion of the district court." In re Fitch, Inc. v. UBS PaineWebber, Inc., 330 F.3d 104, 108 (2d. Cir. 2003) (internal quotation marks omitted). Under Rule 26(b)(1) of the Federal Rules of Civil Procedure, the scope of discovery is limited to "any nonprivileged matter that is relevant to any party's claim or defense," or, "[f]or good cause, . . . to the subject matter involved in the action." Rule 26(c)(1) permits the court to forbid disclosure or discovery on a showing of good cause and Rule 45(c)(3) provides that the court should quash a subpoena, upon a party's motion, when it "creates an undue burden" or "requires disclosure of privileged" information.

The City argues that the testimony and documentation Plaintiffs seek are protected by the deliberative process privilege.[1] The deliberative process privilege derives from the common law, and is codified as well as exceptions to the Federal Freedom of Information Act ("FOIA"), and to New York State's Freedom of Information

---

[1] Courts sometimes distinguish between the deliberative process and mental processes privileges in that the former applies to material reflecting the pre-decisional, mental, and deliberative process, and the latter to the decision-maker's actual thought process. See, e.g., United States v. Hooker Chems. & Plastics Corp., 123 F.R.D. 3, 6 (W.D.N.Y. 1988). However, each privilege "'complements the other, and in combination they operate to preserve the integrity of the deliberative process itself.'" Id. at 7 (quoting Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena, 40 F.R.D. 318, 326 (D.D.C. 1966), aff'd per curiam, 384 F.2d 979 (D.C. Cir. 1967), cert. denied, 389 U.S. 952, 88 S.Ct. 334, 19 L.Ed.2d 361 (1967). Because of their intertwined relationship, and for the sake of simplicity, this opinion will hereafter refer to them collectively as the deliberative process privilege.

4

Law ("FOIL"). 5 U.S.C. § 552(b)(5); N.Y. Public Officers Law § 87.  New York courts, in addressing the privilege, often rely on federal case law, because FOIL's exception was modeled on the federal statute.  In re Tuck-It-Away Assocs., L.P. v. Empire State Dev., 861 N.Y.S.2d 51, 57 (App. Div. 2008).  The privilege is most often litigated in cases involving the freedom of information statutes.  See MacNamara v. City of New York, 249 F.R.D. 70, 77 n.6 (S.D.N.Y. 2008).  "Thus, in addressing the privilege, district courts in this Circuit and elsewhere frequently rely on authority applying the privilege in both FOIA and non-FOIA actions."  Id.

The "deliberative process privilege covers 'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'"  Tigue v. U.S. Dept. of Justice, 312 F.3d 70, 76 (2d Cir. 2002) (quoting Dep't of Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8 (2001).  It "is designed to promote the quality of agency decisions by preserving and encouraging candid discussion between officials . . . [and] is based on 'the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news.'"  Nat'l Council of La Raza v. Dep't of Justice, 411 F.3d 350, 356 (2d Cir. 2005) (quoting Klamath, 532 U.S. at 8-9); See also In re Tuck-It-Away Assocs., L.P., 861 N.Y.S.2d at 57-58 ("[T]he deliberative process privilege's object is to enhance the quality of agency decisions, by protecting open and frank discussion among those who make them within the Government." (internal quotation marks omitted)).

Together with promoting frank discussion, the privilege protects the integrity of the administrative process.  In United States v. Morgan, one of the leading cases

concerning the privilege, the Supreme Court denied the defendant's request to depose the Secretary of Agriculture regarding the process by which he arrived at a decision setting maximum rates charged by market agencies.  313 U.S. 409 (1941).  In denying defendant's request to depose, the Court noted that the administrative process involving the Secretary resembled a judicial proceeding. It stated that

> [j]ust as a judge cannot be subjected to such a scrutiny, . . . so the integrity of the administrative process must be equally respected. . . .  [A]lthough the administrative process has had a different development and pursues somewhat different ways from those of courts, they are to be deemed collaborative instrumentalities of justice and the appropriate independence of each should be respected by the other.

Id. at 421.

For the deliberative process privilege to apply, the information must be inter- or intra-agency, pre-decisional, and deliberative.  Tigue, 312 F.3d at 76-77.  A document is pre-decisional "when it is prepared in order to assist an agency decision-maker arriving at his decision."  Id. at 78.  In determining whether a document is pre-decisional, courts consider whether the party asserting the privilege can "pinpoint the specific decision . . . to which the document correlates," and "verify that the document precedes, in temporal sequence, the decision to which it relates."  Grand Cent. Partnership, Inc. v. Cuomo, 166 F.3d 473, 482 (2d Cir. 1999) (internal quotation marks omitted).  A document is deliberative where it is actually related to the process by which the decision is made.  See id.

The documents and deposition testimony that Plaintiffs seek are intra-agency, pre-decisional and deliberative.  The thought processes of the Medical Board doctors and the deliberations among them are directly related to and precede their recommendations

6

regarding eligibility.  Testimony and documentation regarding these thoughts and deliberations thus qualify for the privilege.

Plaintiffs contend that the privilege does not apply because (1) the Medical Board doctors are not city employees, but independent contractors, (2) the Medical Board doctors are not high-level government officials making policy decisions, (3) the FDNY Commissioner did not assert the privilege, (4) the Defendants are engaged in their own "fishing expedition," attempting to depose Plaintiffs' physicians with regard to issues unrelated to the litigation, and (5) the Medical Boards' decisions collaterally estop the City from relitigating certain issues.  Plaintiffs' arguments are unavailing.

First, the Medical Board doctors' status as independent contractors is irrelevant to the application of the deliberative process privilege.  As the New York Court of Appeals explained, "[o]pinions and recommendations that would, if prepared by agency employees, be exempt for disclosure under [FOIL] as intra-agency materials, do not lose their exempt status simply because they are prepared for the agency, at its request, by an outside consultant."  Xerox Corp. v. Town of Webster, 65 N.Y.2d 131, 131-32 (1985).

Second, the deliberative process privilege is not limited to high-level government officials making policy decisions.  Courts have routinely applied the privilege to a range of agency decisions.  See, e.g., One Beekman Place, Inc. v. City of New York, 564 N.Y.S.2d 169, 169-70 (App. Div. 1991) (applying privilege to documents relating to Department of City Planning's rezoning decision);  Kheel v. Ravitch, 462 N.Y.S.2d 182, 185-87 (App. Div. 1983) (applying privilege to documents relating to Metropolitan Transit Authority's decision not to reappoint plaintiff as arbitrator under collective bargaining agreements); City of Amsterdam v. Bd. of Assessors of the Town of

Providence, 458 N.Y.S.2d 44, 45-46 (App. Div. 1982) (applying privilege to information related to tax assessors' assessment of plaintiff's property); McAulay v. Board of Ed., 403 N.Y.S.2d 116, 116-17 (App. Div. 1978) (applying privilege to documents regarding Board of Education hearing panel that decided teacher's appeal of unsatisfactory rating). The officials involved in these cases are not higher-level than the doctors on the Medical Board and their decisions are no more policy decisions than determinations of disability pension eligibility.

       Third, neither the Fire Commissioner nor the Police Commissioner need assert the privilege because the Pension Fund Medical Boards are not part of the FDNY or NYPD. Though "[t]he claim of deliberative-process privilege must be lodged by the head of the agency after personal consideration of the allegedly privileged material," Resolution Trust Corp. v. Diamond, 137 F.R.D. 634, 641 (S.D.N.Y. 1991), the Medical Board is the government entity asserting the privilege, and, therefore, the affidavits and explanations of the Medical Board Chairpersons, see Kunstadt Aff. and Pflum Aff., satisfy the requirement.

       Fourth, Defendants' depositions of Plaintiffs' own physicians are irrelevant. Whom Defendants depose and the questions they ask have no bearing on plaintiffs' effort to invade the deliberative process privilege.  Furthermore, the Medical Board doctors did not treat Plaintiffs.  They made administrative determinations based on information provided by treating physicians.  Nothing in this opinion prevents depositions of City-employee physicians, who actually treated the Plaintiffs, regarding their treatments and diagnoses.

Finally, Plaintiffs' argument based on collateral estoppel also is irrelevant. Collateral estoppel applies to decisions. But the Plaintiffs seek, not the Boards' decisions, but the thought processes and comments of doctors preliminary to such decisions. Collateral estoppel does not arise from such thought processes and comments.

Moreover, the Medical Boards' decisions do not collaterally estop the City from relitigating any issues involved in this case.[2] Collateral estoppel precludes relitigation of "an administrative agency's quasi-judicial determination when . . . (1) the issue sought to be precluded is identical to a material issue necessarily decided by the administrative agency in a prior proceeding; and (2) there was a full and fair opportunity to contest this issue in the administrative tribunal." Jeffreys v. Griffin, 1 N.Y.3d 34, 39 (2003). Plaintiffs have not established either prerequisite. The Medical Boards did not consider issues of fault and their determinations regarding injuries and causation were guided by presumptions and burdens of proof different from those involved in this litigation. The proceedings before the Boards did not provide the City with a full and fair opportunity to litigate the issues nor did the City have the same incentive to do so as it does here. Any money paid out pursuant to the Medical Boards' determinations came from the Pension Funds, not directly from the City. For these reasons, among others, the Medical Boards' determinations do not have the effect of collateral estoppel.

The deliberative process privilege is not absolute. In determining whether to preclude discovery of information that qualifies for the privilege, the court must balance the public interest in nondisclosure against the need of the particular litigant for access to the information. MacNamara, 248 F.R.D. at 79.

---

[2] Although the issue of collateral estoppel is not relevant to the City's motion, the parties have fully briefed it pursuant to my Order for Further Briefing dated October 19, 2009. I therefore provide an advisory decision on the issue subject to future reconsideration.

9

The information Plaintiffs seek has little, if any, evidentiary value. The Medical Board did not decide issues of negligence or fault. They considered medical knowledge and experience, guided by statutory presumptions and differing burdens of proof, applied to issues of pension qualifications. The issues that have to be decided in the lawsuits in this court involve different issues and different considerations, with different legal presumptions. Moreover, Plaintiffs have access to the decisions the Boards actually issued, and the medical records and other factual information on which the decisions of the Boards were based. The Medical Board doctors' thought processes and deliberations concerning these medical records are not relevant. Plaintiffs and Defendants have engaged, and will be engaging, their own consultants and trial experts, who will have ample opportunity to review all the medical facts and treatments relevant and useful to formulating their opinions. See Fed. R. Evid. 702.

The public interest in nondisclosure outweighs Plaintiffs' need for the information. The public has a substantial interest in a fair and efficient administrative process for determining disability pension eligibility. As the Chairpersons of the NYPD and FDNY Pension Fund Medical Boards testified in affidavits and declarations submitted in connection with these motions, the willingness of medical experts to serve on Boards and express their opinions fully and candidly will be chilled if they fear that what they think and say will become the subjects of examination and cross-examination in depositions and civil proceedings. Kunstadt Aff. ¶ 5; Pflum Aff. ¶ 5. The integrity of these pension boards inevitably will be compromised.

Because the public interest in nondisclosure outweighs Plaintiffs' need for the information, the deliberative process privilege protects the thoughts and deliberations of the Medical Board doctors.

For the reasons stated, I grant the City's Motions to Quash the Subpoenas of the FDNY and NYPD Pension Fund Medical Boards. The Clerk shall mark the motions (Doc. Nos. 1552 and 1572) as terminated.

SO ORDERED.

Dated: December 4, 2009
New York, New York

ALVIN K. HELLERSTEIN
United States District Judge